IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01919-GPG

RONALD HAROLD, and as the widower and next of kin for wife, the late Olive Harold,

    Plaintiffs,

v.

UNIVERSITY OF COLORADO HOSPITAL,
CITY AND COUNTY OF DENVER,
MAYOR MICHAEL HANCOCK,
DENVER DEPARTMENT OF HUMANS SERVICES,
DON MARES,
DENVER DEPARTMENT OF HUMAN SERVICES, ADULT PROTECTION UNIT,
JUANITA-RIOS JOHNSTON
QUALITY PARTNERS HEALTH CARE SERVICES, LLC,
VIVAGE QUALITY HEALTH CARE PARTNERS,
HIGHLINE REHABILITATION & CARE CENTER,
JEFFREY A. RICHARDSON,
KIM M. RUSSELL,
LISA MARIE DIPONIO,
DAVID M. BERNHART, JR., ESQ.,
REBECCA PARKER,
TAMMY MONTGOMERY,
ERIN EGAN,
STACY GIBBS, and
DERRIC MONTANO,

    Defendants.

## ORDER TO AMEND

Plaintiff, Ronald Harold, is a resident of Denver Colorado. He initiated this action on September 3, 2015 by filing a Complaint (ECF No. 1). He has been granted leave to proceed *in forma pauperis*. (ECF No. 24).

On September 24, 2015, the Court reviewed Plaintiff's Complaint and determined it was deficient.  Therefore, Plaintiff was ordered to cure certain designated deficiencies if he wished to pursue his claims. (ECF No. 6).  On October 23, 2015, Plaintiff filed an amended complaint, which was 190 pages long and asserted eighteen claims for relief against twenty-one defendants. (ECF No. 7).  The Court reviewed the amended complaint and again determined it was deficient.  Plaintiff was again directed to cure certain designated deficiencies and file a Second Amended Complaint if he wished to pursue his claims in this action. (ECF No. 14).  Specifically, Magistrate Gallagher directed Plaintiff to file his Second Amended Complaint on the court-approved form and to file a Second Amended Complaint that complies with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

On November 12, 2015, Plaintiff filed an Emergency Motion for a Stay of Action (ECF No. 12) and Emergency Motion to Relocate Plaintiff's Wife to Another Nursing Facility (ECF No. 13).  In these motions, Mr. Harold requested this Court to stay a Permanent Civil Protection Order issued by Denver Probate Judge Leith, which prevented Plaintiff from seeing his wife.  He also requested that this Court order his wife to be transferred to another nursing facility.  Both of these motions were denied by the Court on November 23, 2015. (ECF No. 15).

After receiving two extensions of time, Plaintiff filed a Second Amended Complaint on January 13, 2016. (ECF No. 23).  The Court must construe the Second Amended Complaint liberally because Plaintiff is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. For the following reasons, Plaintiff will be directed to file a third amended complaint if he wishes to pursue his claims in this action.

**I.     Background**

Mr. Harold's Second Amended Complaint is 74 pages long. It names himself personally as a Plaintiff, as well as himself as widower and next of kin for his wife, the late Olive Harold. It asserts thirty-nine claims for relief against twenty defendants. (Although only nineteen defendants are listed in the caption page, the text of the Second Amended Complaint includes a claim against Defendant Judge Elizabeth Leith, who is not listed in the caption).

The allegations in the Second Amended Complaint surround the fact that Mr. Harold's eighty-seven year old wife, Olive Harold, became a ward of the state. Mrs. Harold passed away on November 15, 2015, after this legal action was initiated. At the time of her passing, she resided at Highline Rehabilitation and Care Community.

Mr. Harold believes his and his late wife's constitutional rights were violated during the legal proceedings that resulted in Mrs. Harold becoming a ward of the state and a Temporary and then Permanent Civil Protection Order being entered against Mr. Harold. Plaintiff also believes numerous defendants failed to provide adequate medical care to Mrs. Harold. Further, he claims that the refusal to allow him to see or communicate with his wife violated their constitutional rights. He seeks damages.

## II. Second Amended Complaint

### A. Claim Against Defendant Judge Leith

First, Mr. Harold's claim against Judge Leith is barred by absolute judicial immunity. Judges are absolutely immune from liability in civil rights suits for damages for actions taken in their judicial capacity unless the judge was acting in the clear absence of all jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Hunt v. Bennett*, 17 F.3d 1263, 1266-67 (10th Cir. 1994). Mr. Harold does not allege any facts that demonstrate Judge Leith acted outside the scope of her absolute immunity with respect to her rulings in the probate cases. (See ECF No. 23 at 64). Therefore, unless Plaintiff demonstrates that Judge Leith is not entitled to absolute judicial immunity, she should not be included as a Defendant in Plaintiff's Third Amended Complaint.

### B. Claims Against Denver Department of Human Services, Denver Department of Human Services – Adult Protection Unit, University of Colorado Hospital, and State Officials in their Official Capacity.

The Denver Department of Human Services, the Denver Department of Human Services – Adult Protection Unit, and the University of Colorado Hospital are entities of the State of Colorado and, therefore, are protected by Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Meade v. Grubbs*, 841 F.2d 1512, 1525-26 (10th Cir. 1988); *see also Jackson v. City and County of Denver*, 628 F. Supp. 2d 1275, 1285 (D. Colo. 2008) (citing *Freeman v. White*, 2006 U.S. Dist. LEXIS 70315, 2006 WL 2793139, at *8-9 (D. Colo. Sept 28, 2006) ("DDHS is in all cases an arm of the state for purposes of Eleventh Amendment immunity."). Similarly, the official

capacity claims against state officials are construed as claims asserted against the State of Colorado. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (stating that claims asserted against government officials in their official capacities are construed against the governmental entity). "It is well established that absent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies." *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994), *overrruled on other grounds by Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998). The State of Colorado has not waived its Eleventh Amendment immunity, *see Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988), and congressional enactment of § 1983 did not abrogate Eleventh Amendment immunity, *see Quern v. Jordan*, 440 U.S. 332, 340-345 (1979).

Defendants, the Denver Department of Human Services, the Denver Department of Human Services – Adult Protection Unit, the University of Colorado Hospital, and the state employees in their official capacities, therefore, are improper parties to this action.

### C.  Claims Against the City and County of Denver.

Municipalities and municipal entities, such as the City and County of Denver, are not liable under § 1983 solely because their employees inflict injury on a plaintiff. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). To establish liability, a plaintiff must show that a policy or custom exists and that there is a direct causal link between the policy or custom and the injury alleged. *City of Canton, Ohio v. Harris*,

489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Plaintiff cannot state a claim for relief against the City and County of Denver under § 1983 merely by pointing to isolated incidents. *See Monell*, 436 U.S. at 694. Vague and conclusory allegations are insufficient to establish "a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

In the Second Amended Complaint, Plaintiff alleges that the City and County of Denver exhibited deliberate indifference to the medical needs of Mrs. Harold, but fails to allege that any purported constitutional violation was caused by a policy or custom of the City and County of Denver. (ECF No. 23 at 68-69). Therefore, the City and County of Denver appears to be an inappropriate party in this action.

### D. Claims Against Mayor Hancock, Don Mares, and Juanita Rios-Johnston

Next, Plaintiff fails to allege personal participation of Defendants Mayor Hancock, Don Mares, the DDHS Director, and Juanita Rios-Johnston, the DDHS-Adult Protection Services Director. Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Mr. Harold must show that each defendant caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). A supervisory official may not be held liable for the

unconstitutional conduct of his or her subordinates on a theory of respondeat superior.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).   Furthermore,

> when a plaintiff sues an official under § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well.

*See Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677).   Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."   *Id.* at 1199.

In his claims against Defendants Hancock, Mares, and Rios-Johnston, Plaintiff alleges that they "authorized and supported" Defendant Russell's wrongful, illegal and unconstitutional 45-day detention and false imprisonment.   However, the only specific factual allegation relating to the conclusory statement that these Defendants "authorized" any unconstitutional misconduct is that Plaintiff states he informed them of the alleged misconduct either in person, through the mail, or by phone. (ECF No. 23 at 66, 67, 69). These allegations fail to demonstrate that the Defendants personally participated in any alleged constitutional violations based on their supervisory responsibilities.   Accordingly, in the Third Amended Complaint, Plaintiff should not include these Defendants unless he

can adequately demonstrate they personally participated in the alleged constitutional violations.

### E. State Action

Additionally, Plaintiff's Second Amended Complaint fails to demonstrate that numerous defendants were acting under color of state law.  In the court's November 18, 2015 Order, Plaintiff was directed that he should name as defendants only that persons that he contends were acting under color of state law. (ECF No. 14 at 6).   Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *see also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").   "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."   *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks omitted).

Private conduct constitutes state action only if it is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).   Further, while state action can be "present if a private party is a 'willful participant in joint action with the State or its agents,'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir.1995) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)), "the mere acquiescence of a state official in the actions of a private party is not sufficient," *id.* (citing *Flagg Bros. v. Brooks*,

436 U.S. 149, 164 (1978)). "[C]onstitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Moreover, a § 1983 plaintiff must allege more than conclusory allegations of a conspiracy between state actors and private defendants. *See Beedle v. Wilson*, 422 F.3d 1059, 1073 (10th Cir. 2005) (holding conclusory allegation of conspiracy with state actors insufficient to extend § 1983 liability to private defendant); *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir.1994) (same).

      **1. Claims Against Quality Partners Health Care Services, LLC, Vivage Quality Health Care Partners, and Highline Rehabilitation and Care Community.**

Plaintiff's Second Amended Complaint fails to demonstrate that Defendants Quality Partners Health Care Services, LLC, Vivage Quality Health Care Partners, and Highline Rehabilitation and Care Community were acting under "color of state law."

Mr. Harold does not allege any specific facts to show that those Defendants' actions were fairly attributable to the state and resulted in a deprivation of Plaintiff's constitutional rights. Instead, Plaintiff simply makes conclusory allegations that they were "acting under color of law." Such conclusory allegations do not adequately demonstrate state action necessary for § 1983 liability.

      **2. Claims Against Defendants Derric Montano, Stacy Gibbs, Dr. Erin Egan, Lisa DiPonio, Jeffrey Richardson, Rebecca Parker, and Tammy Montgomery**

Likewise, the Second Amended Complaint fails to demonstrate that Defendants Derric Montano, Stacy Gibbs, Dr. Erin Egan, Lisa DiPonio, Jeffrey Richardson, Rebecca Parker, and Tammy Montgomery were acting under "color of state law" when they

allegedly violated Plaintiff's constitutional rights.   Plaintiff asserts that Derric Montano, Stacy Gibbs, Jeffrey Richardson, Rebecca Parker, and Tammy Montgomery are employees of the Highline Rehabilitation and Care Community, Dr. Erin Egan is employed by Rocky Mountain Senior Care, and Lisa DiPonio is employed at Diponio & Diponio.

The Second Amended Complaint simply makes conclusory allegations that these Defendants were "acting under color of state law."   Such conclusory allegations are insufficient to demonstrate a nexus between the state and the individuals to justify § 1983 liability.

In the Third Amended Complaint, Plaintiff should demonstrate that the Defendants were "acting under color of state law" if he wishes to pursue § 1983 claims against them.

### F.   *Rooker-Feldman* Doctrine

Finally, Plaintiff is reminded that this court is without jurisdiction to overturn decisions of the Denver Probate Court.   The *Rooker-Feldman* doctrine provides that lower federal courts are without subject matter jurisdiction to hear claims actually decided by a state court, or claims that are "inextricably intertwined" with a state court judgment. *See Haas v. Stewart*, No. 05-cv-02556-MSK-CBS, 2006 U.S. Dist. LEXIS 69290, *8-11 (D. Colo. Sept. 15, 2006); *Guttman v. Khalsa*, 401 F.3d 1170, 1173 (10th Cir. 2005).   The doctrine exists to prevent a party losing in state court from seeking what, in substance, would be appellate review of a state court decision in a United States District Court, based on the losing party's claim that the state court order itself violates the loser's federal rights. *Id.*   In determining whether claims of constitutional violations are "inextricably

intertwined" with the state court proceedings, the Court inquires whether the state court judgment caused, actually and proximately, the injury for which the Plaintiffs seek redress. *Id.* Therefore, to the extent any of Plaintiff's claims involve injuries that were actually and proximately caused as a result of the Denver Probate Court proceedings, such claims are barred in this action by the *Rooker-Feldman* doctrine.

Accordingly, it is

ORDERED that Plaintiff file, **within thirty (30) days from the date of this order**, a Third Amended Complaint as directed in this order. It is

FURTHER ORDERED that Plaintiff shall obtain the court-approved Complaint form, along with the applicable instructions, at www.cod.uscourts.gov and use that form to file his Third Amended Complaint. It is

FURTHER ORDERED that, if Plaintiff fails to file a Third Amended Complaint that complies with this order within the time allowed, the action may be dismissed without further notice.

DATED February 25, 2016, at Denver, Colorado.

BY THE COURT:

s/Gordon P. Gallagher
United States Magistrate Judge
United States District Court